IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 08-376 |
| | ) | |
| ONDARYLE SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

## I.      Introduction

Pending before the court are a petition and a supplemental petition alleging that

defendant Ondaryle Smith ("Smith") violated the conditions of his supervised release. (ECF Nos.

2123, 2141.) Smith was convicted in this case of conspiracy to possess with intent to distribute

and distribute 5 grams or more of cocaine base, in violation of 18 U.S.C. § 846. This court

sentenced Smith to, among other things, a term of imprisonment of 120 months and a term of

supervised release of 5 years, which was subject to various conditions of supervision. Smith

served his term of imprisonment and commenced his term of supervised release. On three prior

occasions, Smith violated the conditions of his term of supervised release. (ECF Nos. 1903,

1994, 2108.)

On February 9, 2022, this court held a hearing on the pending petitions, which allege that

Smith violated the following five conditions of his term of supervised release:

1.   You must not commit another federal state, or local crime;

2.   You must not knowingly leave the federal judicial district where you are authorized
     to reside without first getting permission from the court or the probation officer;

3.   The defendant shall not unlawfully possess a controlled substance. The defendant
     shall refrain from any unlawful use of controlled substance

4.   The defendant shall participate in a program of testing, and, if necessary, treatment

for substance abuse. The program must be approved by the probation officer and the defendant must participate in the program until he is released from the program by the court; and

5.  The defendant must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work, you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

(ECF Nos. 2123; 2141.) The violations of the condition that Smith not commit another federal, state, or local crime are based upon the following allegations by the probation office:

(1)  on July 5, 2021, Smith was charged with one count of harassment/physical contact (S) in Erie, Pennsylvania, for allegedly striking his girlfriend Tanesha Bone ("Bone") in the face several times (the "Erie incident");

(2)  on July 12, 2021, Smith was arrested in Orange County, Florida, and charged with one count of Battery—Commit Domestic Battery by Strangulation (F) and one count of Domestic Violence (F) for striking Bone in the face, punching her, strangling her, and spitting in her face (the "Florida incident");

(3)  on November 11, 2020, Smith was charged in North Huntington, Pennsylvania, with three courts of driving under the influence (M), possession of a controlled substance (M), possession of marijuana (M), disregard traffic lane (S) and restrictions on alcoholic beverages (S); and

(4)  on February 17, 2021, Smith was charged in Greensburg, Pennsylvania, with accidents involving damage to attended vehicles/property (M3) for striking the back of a vehicle with his vehicle, refusing to provide the other driver his information, and driving away from the scene.

(ECF Nos. 2123; 2141.) The violation for unlawfully possessing or using a controlled substance was based upon allegations that Smith tested positive for marijuana and cocaine. (ECF No. 2141.)  The violation that defendant failed to participate in a program of testing and treatment for substance abuse was based upon allegations that Smith submitted a diluted drug urinalysis. (Id.) The violation that defendant failed to maintain employment was based upon allegations that

Smith left his job and could not be rehired based upon his tardiness, calling off work, and failing to report the change of employment status to his probation officer. (Id.)

At the hearing held on February 9, 2022, the defendant admitted to all violations of the conditions of his supervised release, except for the Erie incident and Florida incident. (H.T. 2/9/2022 (ECF No. 2159) at 15.) With respect to those disputed matters, the government presented the testimony of John Alden ("Alden"), a deputy first class with the Orange County Sheriff's Office in Orange County, Florida, and Mihaly Kadar ("Kadar"), a trooper with the Pennsylvania State Police, and submitted five photographs into evidence. The parties also disputed whether Smith's violation for the possession of marijuana and cocaine was a Grade B or Grade C violation. At the conclusion of the hearing, the court determined that supplemental briefing, i.e., proposed findings of fact and conclusions of law, was necessary to address the Erie incident, the Florida incident, and whether Smith's violation for the possession of marijuana and cocaine was a Grade B or Grade C violation.

The parties filed proposed findings of fact and conclusions of law. After review of the parties' submissions, the transcript from the hearing, the evidence presented at the hearing, and the applicable law, the court makes the followings findings of fact and conclusions of law:

## II.     Findings of Fact

### The Erie Incident

**FOF 1.**      On July 2, 2021, at 5:45 a.m., Kadar was dispatched to Room 124 at the Wingate by Wyndham Hotel in Erie, Pennsylvania, "for the report of an active domestic report of male versus female" by a hotel employee. (H.T. 2/9/2022 (ECF No. 2159) at 35.)

**FOF 2.**      When Kadar arrived on scene, he witnessed a family leaving "due to commotion" at the hotel. (H.T. 2/9/2022 (ECF No. 2159) at 37.)

**FOF 3.**     Kadar and his partner went to Room 124 and knocked on the door. (H.T. 2/9/2022 (ECF No. 2159) at 35.) Bone answered the door. (Id. at 36.)

**FOF 4.**     Bone told Kadar that: she was in the room with Smith; they had an argument; he struck her in the face with his hand multiple times; and he left the scene when he learned the police were called. (H.T. 2/9/2022 (ECF No. 2159) at 36.)

**FOF 5.**     Kadar did not make contact with Smith at the hotel. (Id.)

**FOF 6.**     Kadar did not see any injuries on Bone. (H.T. 2/9/2022 (ECF No. 2159) at 36.) He looked for injuries in a well-lit hotel room. (Id. at 39.)

**FOF 7.**     Kadar issued Smith a nontraffic citation for harassment physical contact that did not result in bodily injury. (H.T. 2/9/2022 (ECF No. 2159) at 36.)

**FOF 8.**     Bone described the vehicle Smith used to leave the hotel. (H.T. 2/9/2022 (ECF No. 2159) at 36.) Other police units were dispatched to search for the vehicle, but it was not located. (Id.)

**FOF 9.**     Kadar did not have any contact with Bone after July 2, 2022. He "closed out the incident after he spoke to her [on July 2, 2021] and issued…[the] charges" against Smith. (H.T. 2/9/2022 (ECF No. 2159) at 37.)

### The Florida Incident

**FOF 10.**     On July 12, 2021, Alden responded to a call from the Liki Tiki Resort (the "resort") in Orange County, Florida, that a physical altercation occurred at the resort. (H.T. 2/9/2022 (ECF No. 2159) at 24.)

**FOF 11.**     Alden arrived at the resort, made contact with the complainant, i.e., Bone, outside the pool area of the resort in the parking lot. (H.T. 2/9/2022 (ECF No. 2159) at 24, 31.) Bone reported that she had an argument and physical altercation with Smith. (Id. at 24.)

**FOF 12.**     Bone verbally and in a sworn written statement reported to Alden that: she went to her hotel room to retrieve pool toys for her children; Smith prevented her from leaving the hotel room; she tried to move his arm to leave the room; and he smacked her and punched her in the head, which caused her to fall. She told Alden that Smith grabbed her, choked her (inhibiting her ability to breath), and spit in her face. (H.T. 2/9/2022 (ECF No. 2159) at 24.) Once Smith released Bone, she called the police. (Id.)

**FOF 13.**     Alden observed on scene that Bone had red marks on both sides of her face and throat, i.e., "you could see like it was squeezed or smacked." (H.T. 2/9/2022 (ECF No. 2159) at 25-26.) Her voice was "raspy as if there was some kind of trauma to her vocal cords." (H.T. 2/9/2022 (ECF No. 2159) at 25.) Alden requested Orange County Fire and Rescue ("Fire and Rescue") to come to the scene to examine Bone. Fire and Rescue cleared Bone and determined she did not have to go to the hospital. (Id.)

**FOF 14.**     Alden and his colleagues took the photographs of Bone on July 12, 2021. (H.T. 2/9/2022 (ECF No. 2159) at 28.) The photographs show redness on Bone's neck. (Id., Ex. A.) As explained by Alden, however, the photographs were taken late at night, the lighting was "fairly poor," and he did not have a "great" camera. (H.T. 2/9/2022 (ECF No. 2159) at 30.)

**FOF 15.**     Alden attempted to contact Smith by knocking on his hotel room door, but no one answered the door. Alden could see from the outside balcony that there were people inside the hotel room. (Id.) Two juveniles exited the hotel room and reported to deputies that Smith was inside the room. (Id.)

**FOF 16.**     Bone wanted Alden to perform a "safety check" of the hotel room to make sure it was safe for her to return to the room. (H.T. 2/9/2022 (ECF No. 2159) at 25-26.) She gave Alden permission to enter the hotel room. (Id. at 25-26.)

**FOF 17.**     When Alden entered the room, he found Smith sleeping on the couch. (<u>Id.</u> at 26.) At some point thereafter, Smith was "secured" and read his "<u>Miranda</u> rights," which he invoked. (<u>Id.</u>) He was placed under arrest and transported to Orange County Jail. (<u>Id.</u>)

**FOF 18.**     Alden testified that on the way to the jail, Smith "spontaneously" uttered that Bone smacked him and spit in his face. (H.T. 2/9/2022 (ECF No. 2159) at 26.) Smith declined to press charges against Bone based upon those allegations. (<u>Id.</u>)

**FOF 19.**     Bone was booked into the jail for "unruly behavior." (H.T. 2/9/2022 (ECF No. 2159) at 26.)

**FOF 20.**     Bone did not press charges against Smith and the case was deemed "not suitable for prosecution." (H.T. 2/9/2022 (ECF No. 2159) at 29, 32.) Alden explained that Smith was arrested because he was deemed the primary aggressor and the primary aggressor is arrested under Florida law. (H.T. 2/9/2022 (ECF No. 2159) at 29.)

### III.     Conclusions of Law

### <u>Applicable Law with respect to the Erie Incident and Florida Incident</u>

**COL 1.**     To revoke a term of supervised release, the court must find that the defendant violated a condition of his supervised release by a *preponderance of the evidence*. 18 U.S.C. § 3583(e)(3).

**COL 2.**     When the alleged violation relates to the condition that the defendant not commit another federal, state or local crime, there is no requirement that the defendant be convicted, or even indicted.  <u>United States v. Murphy</u>, 819 F. App'x 77, 79 (3d Cir. 2020) (citing <u>United States v. Poellnitz</u>, 372 F.3d 562, 566 (3d Cir. 2004).  "'What matters is whether [the defendant] committed [a] crime as a matter of fact.'" <u>Id.</u> (quoting <u>Poellnitz</u>, 372 F.3d at 567).  "Thus, 'to revoke [supervised release,] it is not necessary that the [defendant] be adjudged guilty

of a crime, but only that the court be reasonably satisfied that he has violated one of the conditions' of his release." Id. (quoting Poellnitz, 372 F.3d at 566).

> COL 3.      It is not necessary for the victim to testify in order to prove the violation. In Murphy, the victim recanted, but the court's finding of a violation was affirmed based upon a 911 call, photographs of the victim's injuries, and her statements to police shortly after the incident.  Id. at 80.

> COL 4.      Supervised release violations are graded by their level of severity.  Grade A violations require conduct constituting a crime punishable by a term of imprisonment exceeding one year and conduct that constitutes a "crime of violence." U.S.S.G. § 7B1.1(a)(1).

> COL 5.      Grade B violations involve conduct constituting any other federal, state, or local offense punishable by more than a year. U.S.S.G. § 7B1.1(a)(2).

> COL 6.      Grade C Violations involve conduct constituting a crime punishable by a term of imprisonment of one year or less or a violation of any other condition of supervision. U.S.S.G. § 7B1.1(a)(3).

> COL 7.      Section 4B1.2 of the sentencing guidelines provides:

The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2.

> COL 8.      As explained in United States v. Colon, 802 F. App'x 679 (3d Cir. 2020), "[t]o determine whether a defendant's conduct constitutes a crime of violence in the context of a

revocation proceeding, district courts do not examine just the elements of the charged offense or crime of conviction but instead look to 'the defendant's actual conduct[.]'" Id. at 682 (quoting Carter, 730 F.3d at 192; U.S.S.G. § 7B1.1 cmt. n.1).

**COL 9.**     Although the evidence need not be admissible, a district court "'must base its determination on information that ha[s] sufficient indicia of reliability to support its probable accuracy.'"  Id. (quoting United States v. Rowe, 919 F.3d 752, 762 n.8 (3d Cir. 2019)).

### **The Erie Incident**

**COL 10.**     The government argues that on July 2, 2021, in Erie, Pennsylvania, Smith committed simple assault under Pennsylvania state law when he "recklessly used force against…Bone[.]" (ECF No. 2158 ¶ 37.)

**COL 11.**     Under Pennsylvania law, simple assault is punishable by more than one year in prison; indeed, the statutory maximum term of imprisonment for the offense is two years. 18 PA. CONS. STAT. § 2701(b); 30 PA. CONS. STAT. § 923.

**COL 12.**     A person commits simple assault if he or she, among other things, "attempts to cause or…recklessly causes bodily injury to another[.]" 18 PA. CONS. STAT. § 2701(a)(1).

**COL 13.**     To act with "recklessness" means to act with "a conscious disregard of a known risk" of bodily injury to another person. Commw. v. Thomas, No. 3092 EDA 2014, 2015 WL 7758614, at *2 (Pa. Super. Ct. Dec. 2, 2015) (quoting Commw. v. Emler, 903 A.2d 1273, 1278 (Pa. Super. Ct. 2006)).

**COL 14.**     "Bodily injury" is defined as "[i]mpairment of physical condition or substantial pain." 18 PA. CONS. STAT. § 2301.

**COL 15.**     The government "need not establish that the victim actually suffered bodily injury; rather, it is sufficient to support a conviction if the…[government] establishes an

attempt to inflict bodily injury. This intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury." Commw. v. Richardson, 636 A.2d 1195, 1196 (Pa. Super. Ct. 1994).

**FOF 21.**    Here, Kadar testified that upon his arrival to the hotel at 5:45 a.m., he saw a family leaving because of commotion in the hotel. Bone told him that: she was in the hotel room with Smith; they had an argument; he struck her in the face with his hand *multiple* times; and he left the scene when he learned the police were called.

**COL 16.**    There is no evidence of record that Bone sustained bodily injury from Smith; rather, there is evidence that Smith intended to cause bodily injury when he struck her in the face with his hand *multiple* times. Under those circumstances, it is more likely than not that Smith attempted to cause Bone bodily injury when he struck her in the face multiple times and committed simple assault against her. Thus, Smith committed a Grade B violation.

### The Florida Incident

**COL 17.**    The government argues that on July 12, 2021, Smith committed domestic battery by strangulation against Bone and violated Florida Statue 784.041(2).

**COL 18.**    Courts recognize that domestic battery by strangulation under Florida law is a crime of violence under the sentencing guidelines. United States v. Rosado, 785 F. App'x 81, 86 (3d Cir. 2019) ("We agree with the District Court, and with the Eleventh Circuit, that domestic battery by strangulation is a crime of violence."); United States v. Dixon, 874 F.3d 678, 682 (11th Cir. 2017) ("Florida's domestic-battery-by-strangulation statute qualifies as a 'crime of violence[.]'").

**COL 19.**        The statutory maximum penalty for domestic battery by strangulation, which is a felony of the third degree under Florida law, is five years. Fla. Stat. Ann. § 775.082(3)(d).

**COL 20.**        Under those circumstances, domestic battery by strangulation is a Grade A violation under the guidelines because it is punishable by a term of imprisonment exceeding one year and constitutes a "crime of violence." U.S.S.G. § 7B1.1(a)(1).

**COL 21.**        Section 784.041(2)(a) defines domestic battery by strangulation as follows:

> A person commits domestic battery by strangulation if the person knowingly and intentionally, against the will of another, impedes the normal breathing or circulation of the blood of…a person with whom he or she is in a dating relationship, so as to create a risk of or cause great bodily harm by applying pressure on the throat or neck of the other person or by blocking the nose or mouth of the other person.

Id.

**COL 22.**        "'[G]reat bodily harm' does not include slight, trivial, minor, or moderate harm, such as mere bruising, but instead requires severe physical injury." United States v. Dixon, 874 F.3d 678, 681 (11th Cir. 2017).

**COL 23.**        Here, Alden testified that Bone, who was identified as Smith's significant other, called the police after an altercation with Smith. She verbally and in a sworn written statement reported to Alden that: Smith prevented her from leaving the hotel room; she tried to move his arm to leave the room; he smacked her and punched her in the head, which caused her to fall; choked her (inhibiting her ability to breath); and spit in her face.

**COL 24.**        Alden's testimony that he saw red marks on the side of Bone's throat was corroborated by the photographs of Bone, which were taken on the night of July 12, 2021. Alden also testified that Bone's voice was "raspy as if there was some kind of trauma to her vocal cords." (H.T. 2/9/2022 (ECF No. 2159) at 25.)

**COL 25.**      Smith on the way to the jail told Alden that Bone smacked him and spit in his face. (H.T. 2/9/2022 (ECF No. 2159) at 26.) Smith, however, declined to press charges against Bone based upon those allegations. (Id.) There is no evidence of record th`at Smith denied punching Bone, smacking Bone, or inhibiting her ability to breathe by choking her. Under those circumstances and in light of Alden's observations and photographs of Bone, the court credits Bone's verbal and written statements to law enforcement that Smith punched, smacked, and choked her (inhibiting her ability to breathe) despite Smith's statement to Alden that Bone smacked him and spit in his face.

**COL 26.**      Based upon the foregoing, the evidence presented in this case shows that it is more likely than not that Smith *knowingly and intentionally* impeded the normal breathing of Bone, with whom he is in a dating relationship. Bone had red marks on her throat and a raspy voice, which is circumstantial evidence of the force Smith used when he choked her. She also reported to Alden that Smith spit on her, smacked her, and punched her in the head, which is circumstantial evidence that Smith knowingly and intentionally wanted to harm Bone.

**COL 27.**      Alden testified that Bone reported that when Smith choked her, i.e., applied pressure to her throat or neck, it impeded her ability to breathe.  Bone's voice was also raspy as if there was trauma to her vocal cords.

**COL 28.**      Based upon the evidence of record, Smith did not cause Bone great bodily harm when he choked her. The court concludes, however, that when Smith choked Bone with such force that he inhibited her ability to breath, impacted her vocal cords, and left red marks on her neck, he created a risk of great bodily harm to Bone.

**COL 29.**       Under those circumstances, it is more likely than not that Smith committed the crime of domestic battery by strangulation against Bone, i.e., a Grade A violation of the conditions of his supervised release.

### Grading of Smith's Violation for Possessing or Using Marijuana and Cocaine

**COL 30.**       At the hearing on February 9, 2022, Smith admitted that his urinalysis tested positive for marijuana and cocaine, which violated the condition of his supervised release that he is prohibited from unlawfully possessing or using controlled substances.

**COL 31.**       A positive drug urinalysis for cocaine and marijuana may also be considered circumstantial evidence that the defendant violated the condition of supervised release that he or she not commit another federal, state, or local crime; indeed, possession of a controlled substance is illegal under federal law. 21 U.S.C. § 844(a).

**COL 32.**       The Third Circuit Court of Appeals has recognized that a positive drug urinalysis may be considered circumstantial evidence that a defendant possessed the controlled substance for which he or she tested positive. United States v. Blackston, 940 F.2d 877, 879 (3d Cir. 1991); see also United States v. Jackson, 510 F. App'x 149, 156 (3d Cir. 2013).

**COL 33.**       Thus, a positive drug urinalysis may be circumstantial evidence that a defendant violated a condition of his or her supervised release that he or she not commit another federal, state, or local crime.

**COL 34.**       Whether the positive drug urinalysis is considered a Grade B or Grade C violation of the condition that a defendant shall not commit another federal, state, or local crime is dependent upon the defendant's criminal history and the penalty that may be imposed upon the defendant for committing the crime of unlawful possession.

**COL 35.**     For example, the statutory maximum term of imprisonment that may be imposed upon a defendant found guilty of unlawfully possessing a controlled substance in violation of § 844(a), is one year. Under those circumstances, the violation of the term of supervised release would be a Grade C violation. U.S.S.G. § 7B1.1(a)(3).

**COL 36.**     If, however, the defendant violates § 844(a) after sustaining a previous conviction under that subsection, the statutory maximum term of imprisonment is two years. Under those circumstances, the violation of the term of supervised release would be a Grade B violation. U.S.S.G. § 7B1.1(a)(2).

**COL 37.**     Smith's underlying conviction[1] in this case was conspiracy to possess with intent to distribute and distribute 5 grams or more of cocaine base, in violation of 18 U.S.C. § 846, from in and around 2007 to in and around October 2008. He pleaded guilty to that offense on November 15, 2010.

**COL 38.**     Section 844(c) provides that a "prior conviction" used to increase the statutory penalties includes prior convictions for *conspiring* to possess a controlled substance. 21 U.S.C. § 844(c).[2]

---

[1]    The parties do not dispute the issue, but it is worth noting that the *underlying offense* in a criminal case may constitute the prior conviction upon which increased penalties are based for the possession of controlled substances where a defendant on supervised release tests positive for controlled substance. Jackson, 510 F. App'x at 152.

[2]    Section 844(c) provides:

**(c) "Drug, narcotic, or chemical offense" defined**

As used in this section, the term "drug, narcotic, or chemical offense" means any offense which proscribes the possession, distribution, manufacture, cultivation, sale, transfer, or the attempt or conspiracy to possess, distribute, manufacture, cultivate, sell or transfer any substance the possession of which is prohibited under this subchapter.

**COL 39.**      Thus, the underlying offense in this case would increase the statutory penalties faced by Smith if he were charged with and convicted of the unlawful possession of controlled substances under § 844. In other words, Smith's violation of § 844 when he unlawfully possessed controlled substances subjected him to a statutory maximum term of imprisonment of two years.

**COL 40.**      Under those circumstances, his violation of the condition that he not commit another federal, state, or local crime is a Grade B violation.

### IV.     Conclusion

Based upon the facts of record, the court finds that: the Erie incident is a Grade B violation; the Florida incident is Grade A violation; and Smith's possession of marijuana and cocaine is a Grade B violation.

A continued supervised release hearing is scheduled for April 20, 2022, at 11:00 a.m. The court at that time will continue the supervised release hearing including consideration of the factors set forth in 18 U.S.C. § 3553(a) to determine the appropriate course of action in this case.

BY THE COURT,

Dated: April 19, 2022                    **/s/ JOY FLOWERS CONTI**
                                         Joy Flowers Conti
                                         Senior United States District Court Judge

---

21 U.S.C. § 844(c).